K767HALS

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA

4        v.                        19 Cr. 709 (JFK)

5  ROBERT WILLIAM HALL,

6            Defendant.

7  ------------------------------x

8                                  July 7, 2020
                                   11:00 a.m.
9

10 Before:

11             HON. JOHN F. KEENAN
                               District Judge
12

13             APPEARANCES (via telephone)

14 AUDREY STRAUSS
        Acting United States Attorney for the
15      Southern District of New York
   BY:  REBECCA DELL
16      Assistant United States Attorney

17 CHRISTOPHER FLOOD
        Attorney for Defendant
18
   ALSO PRESENT:  Margaret Girard, F.B.I.
19                Seth Rothman, U.S. Pretrial Services

20

21

22

23

24

25

1          THE COURT:  Starting with the defense, could you

2     please enter your appearance verbally.

3          MR. FLOOD:  Yes, your Honor, good morning.  This is

4     Christopher Flood, Federal Defenders of New York.  I have on

5     the line Robert Hall.

6          THE COURT:  Good morning, Mr. Flood.  Good morning,

7     Mr. Hall.

8          And who is there for the government, please?

9          MS. DELL:  Rebecca Dell on behalf of the government.

10          THE COURT:  All right.  And do we have a court

11     reporter?

12          COURT REPORTER:  Yes, your Honor.

13          THE COURT:  When anybody speaks during this

14     proceeding, would you be sure to identify yourself as to who is

15     the speaker so that the court reporter can appropriately get

16     this down on the record who else is on the phone, please?

17          MR. FLOOD:  Seth Rothman from Pretrial Services,

18     currently supervising Mr. Hall.

19          THE COURT:  Thank you.  And my law clerk is on; is

20     that right?

21          LAW CLERK:  Yes, your Honor.

22          THE COURT:  That's Luke Ryan.

23          And is my deputy clerk on who runs the courtroom?

24          DEPUTY COURT CLERK:  Yes.

25          THE COURT:  That's William Ryan, correct?

1          DEPUTY COURT CLERK:  Yes.

2          THE COURT:  All right.  Is there anyone else on the

3     phone?

4          MS. DOHERTY:  Yes, your Honor, Jill Doherty.  I'm the

5     intern with SDNY.

6          THE COURT:  I'm sorry, I didn't hear you.

7          MS. DOHERTY:  I'm an intern for Rebecca.

8          THE COURT:  OK.  And is there anyone from the public

9     here?

10          MS. GIRARD:  Your Honor, Special Agent Margaret Girard

11     from the F.B.I.

12          THE COURT:  OK.  And anyone else?

13          All right.  Now, first of all, I am addressing

14     Mr. Hall and Mr. Flood.

15          Mr. Hall, as I understand it, Mr. Flood explained to

16     you, Mr. Hall, that you have an absolute right to appear before

17     a judge in a courtroom in the Southern District courthouse for

18     the sentence, and we're doing this over the phone.  Do you

19     understand that?

20          THE DEFENDANT:  Yes.

21          THE COURT:  And do you understand that you are waiving

22     your right to be present before a judge physically in person in

23     court?  Do you understand you're waiving this right?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And the reason we're doing this is because

1  of the emergency because of the COVID virus.  And we're

2  proceeding by telephone because it's not feasible to work up a

3  video conference so we're doing it by telephone.  Are you

4  willing to do this by telephone?

5          THE DEFENDANT:  Yes, yes.

6          THE COURT:  All right.  And did Mr. Flood advise you

7  of all of your rights concerning this?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And, Mr. Flood, do you waive my presence?

10 And where physically are you and Mr. Hall now?

11         MR. FLOOD:  This is Chris Flood.  Yes, we do waive.  I

12 am present in my own home, and Mr. Hall is present in his home.

13 We are connected by cell phone and then we dialed in together.

14         THE COURT:  All right.  And you advised him of his

15 rights; is that correct?

16         MR. FLOOD:  Yes, your Honor, I have.

17         THE COURT:  And you think it's a good idea for him to

18 waive them and to proceed with the sentencing; is that correct?

19         MR. FLOOD:  Yes, sir.

20         THE COURT:  All right.  Does anybody have anything to

21 say before I ask Mr. Flood to speak on behalf of the defendant?

22 Does anybody have anything that they wish to say?

23         All right, hearing nothing, then, Mr. Flood, I will

24 hear you on sentence.

25         MR. FLOOD:  Thank you, your Honor.  This is

1    Christopher Flood.

2              THE COURT:  I should ask you first, of course, have

3    you read the probation report?

4              MR. FLOOD:  Yes, your Honor.

5              THE COURT:  And have you gone over it with Mr. Hall,

6    and has it been read to him?

7              MR. FLOOD:  Yes, your Honor.

8              THE COURT:  All right.  Do you have any objections to

9    the report?

10             MR. FLOOD:  No.

11             THE COURT:  You do?

12             MR. FLOOD:  No.  No, sir, we do not.

13             THE COURT:  No objections to the probation report.

14             All right.  I will hear you on sentence.

15             MR. FLOOD:  Thank you, your Honor.  And I will be

16   brief as I can.

17             Mr. Hall, as the Court knows well from the times he

18   has been before your Honor, and of course from the presentence

19   report and the submissions, has a long history of profound

20   mental illness, and the offense conduct here really cannot be

21   separated from that history and from the relapse of substance

22   abuse that he was deep into at the time that he committed this

23   offense.  That is, it has been a life-long struggle nearly with

24   regard to his mental health, but that is the deep past, and

25   what we have now with Mr. Hall is really a success story.

1          I know one of our exhibits to our submission is the

2     letter from Ms. Julia Owens from Mr. Hall's FACT team.  And

3     FACT stands for Forensic Assertive Community Treatment team.

4     What that is is really a wrap-around community-based services,

5     both mental health and also intensive outpatient drug

6     treatment.

7          And I can only describe Ms. Owens' letter to the Court

8     as glowing.  She talks about how the team is elated to have

9     Mr. Hall back on their roster, and describes Mr. Hall as being

10    an active and dedicated participant in his own care and

11    recovery.  And that is all the difference here, because all of

12    the sentencing factors under 3553(a) would point to a sentence

13    that suggests -- that builds on Mr. Hall's mental health well

14    being.

15         And one thing that we know about his experience at the

16    MDC while he was detained is it was an absolutely terrifying

17    experience during the COVID-19 outbreak, but also his mental

18    health substantially degraded because it was not being treated

19    effectively.  The medication was not the same; it wasn't at the

20    appropriate level; and Mr. Hall really was isolated and

21    suffering quite a bit while in custody.  And then that

22    contrasts so clearly with how he has done since he has been out

23    and at home:  Compliant with the terms of his pretrial

24    supervision, deeply engaged with his FACT team, his mental

25    health and drug treatment, and really building on the

1    relationship with the strongest support he has in his life,

2    which is his mother.  The good news there is that she is

3    currently applying to get them a new apartment with more space

4    so that can be basically a permanent solution for Mr. Hall.

5    So rather than incarcerating him -- which would serve

6    very little purpose, especially given the attenuation of any

7    deterrent effect because of his mental health and substance

8    abuse at the time of the offense -- that really the most

9    appropriate sentence here is to continue him in that productive

10   environment that he is now, because that's is going to be what

11   helps with the safety of the community, is what is going to

12   help Mr. Hall come to grips with his life-long struggle --

13   which also I might add -- and I will close with this -- that

14   Ms. Owens describes Mr. Hall's recovery in very glowing terms

15   but also points out that it is a delicate process and one that

16   is to be deeply and sensitively handled by a committed team

17   that actually now does surround Mr. Hall.  And these are

18   services that are in excess of what we normally see available

19   in federal cases.  It's just much more rich and detailed and

20   compassionate and sensitive to Mr. Hall's condition than any

21   services that I have seen federal courts be able to deploy.

22   So, I really urge the Court to impose a sentence of

23   time served, with supervision of I would guess three years, and

24   with the special condition that he comply with the directives

25   and treatment plan of his FACT team.

1      MR. FLOOD:  Thank you, your Honor.

2      THE COURT:  All right.  Government, do you have

3  anything you wish to say?

4      MS. DELL:  Not much, your Honor.  We rest on our

5  submission, but just also to echo what Mr. Flood was saying, in

6  light of the progress that Mr. Hall has made after being

7  released from prison, as noted in our submission we recommend a

8  below guideline sentence.

9      THE COURT:  All right.  I ask you, Mr. Hall, is there

10  anything you wish to say?

11      THE DEFENDANT:  I had a bad experience going through

12  my mental health situation and being duly diagnosed.  I know I

13  have a mental disease, I have a mental illness, and I'm trying

14  to address the mental health situation appropriately without

15  any more negativity, because I don't need negativity in my

16  life.  I'm trying to get on with my life, and I want to change

17  my lifestyle of living.  I don't want to have wool over my

18  eyes; I want to see the light.  Do you see what I'm saying?  I

19  got to see the light at the end of the tunnel.  I can't keep

20  living, you know, with shades.  I can't keep having these

21  problems come down on me.  I'm trying to bring myself up in the

22  world.

23      And I apologize for my inappropriate misbehaving,

24  negative approach, any bad situation that I put myself in, and

25  I apologize.

1         THE COURT:  All right.  Thank you, Mr. Hall.  I hope

2    that what you said is true, and I hope you do straighten out.

3         All right.  I would observe before I sentence you that

4    the presentence report obviously I have read.  It was dated

5    April 10th of this year.  I have also read carefully the

6    defense submission of July 1, 2020, as well as the government's

7    submission of July 1, 2020 and the defense submission.

8         As Mr. Flood indicated, he seeks a sentence of time

9    served.  In the defense submission there is a report from Dr.

10    Edward Fernandez which details the psychiatric problems and

11    background of the defendant.

12         I also received together with the defendant's

13    submission a letter from his mother and a letter from The

14    Bridge, a community treatment organization, and a letter from

15    Rochelle Veesley, the director of social work with the Federal

16    Defenders Office.  And I received the government's letter

17    recommending a below guideline sentence on July 1, 2020.  And

18    in Mr. Flood's letter of July 1 he seeks what he requested,

19    which is a sentence of time served with certain restrictions on

20    it.

21         Before the Court is a 52 year old American citizen,

22    and he has sadly 21 prior convictions.  He has had a history of

23    psychiatric problems and drug abuse going back to when he was

24    age 13, and he is now, as I said, 52.

25         The case here involves the attempted theft from a bank

1   branch in the Bronx by breaking into the branch by means of

2   burglary.  The probation department in the probation report

3   recommends a sentence of time served.  The total offense level

4   here is 10, the Criminal History Category is not V, as the

5   parties agreed, rather it's VI, and the scope under the

6   guidelines, therefore, is two years to two and a half years,

7   which is 24 to 30 months.

8           I recognize, of course, that the guidelines are

9   advisory and they're not binding upon me.  And I have carefully

10  considered 18 United States Code, Section 3553(a) and all its

11  subdivisions and all its requirements.

12          It is adjudged that the defendant be committed to the

13  custody of the Attorney General of the United States for the

14  period that he has already served.  In other words, the

15  sentence is time served.  He is to serve a period of three

16  years' supervised release, and the supervised release is to be

17  under the standard and mandatory conditions of supervised

18  release, plus there are certain special conditions that I'm

19  setting.

20          He is to be restricted to his residence, which is with

21  his mother, every day for the hours directed by the probation

22  officer.  I am not setting the hours; I'm letting the probation

23  officer do that.  He is restricted to his residence at all

24  times -- that is, the mother's apartment -- except for

25  employment, education, religious services, medical treatment,

1  substance abuse treatment or mental health treatment, any

2  visits with his attorney, if any court appearances are

3  necessary, or any court-ordered obligations or any other

4  activities that are approved ahead of time by the probation

5  department.  He is restricted to the residence except for

6  medical necessities and for those special things that I

7  indicated.  He is to submit his person, his property, his

8  residence, his vehicle, if any, his papers, his computer, and

9  any other electronic communications, to search by the

10 probation, without any needs for a warrant, provided that the

11 search is conducted in a reasonable fashion and on reasonable

12 suspicion of a violation of the condition of supervision or

13 unlawful conduct by Mr. Hall.  Failure to submit to search can

14 be grounds for revocation of release.

15         What that means is if you don't abide by the

16 conditions, Mr. Hall, I can have you sent to prison.  So, you

17 have to abide by these conditions.

18         Also, the defendant is to participate in any

19 outpatient treatment approved by probation, which includes

20 testing to determine whether he has gone back to using drugs or

21 alcohol.  If you or your mother has the ability to pay, you

22 have to pay for that treatment.  If your mother or you don't

23 have the ability to pay, I waive the payment.

24         You are to participate in an outpatient mental health

25 and drug treatment program approved by probation.  You are to

1  continue to take any prescribed medications which are

2  instructed by the healthcare provider.  Again, you are to

3  contribute to the cost of these medications and services based

4  on your ability to pay or the ability of a third-party to pay.

5      You are to provide probation with access to any

6  requested financial information, and you are not to incur any

7  new credit charges or lines of credit.  A $100 special

8  assessment is ordered as is required by law.

9      You are to make restitution, as you've agreed, in the

10  amount of $4213.46, and payments can be forwarded to the

11  Popular Bank at 641 East Tremont Avenue in the Bronx.  Payments

12  are to be made by either certified check, money order or wire

13  transfer -- not just a simple bank check -- or by cash or

14  credit card.  But if it's by check, it has to be a certified

15  check, and the check should be delivered or hand delivered

16  or -- or mailed, rather -- to the United States Courthouse at

17  500 Pearl Street, New York, New York 10007, attention to the

18  cashier, and that's required by 18 United States Code 3611 Make

19  sure your put your name and the docket number of the case on

20  the check or on the money order, whatever it is you're using to

21  pay.

22      I am letting you and probation figure out the schedule

23  of the payments.  I don't think forfeiture applies in the case.

24  Am I correct?

25      MS. DELL:  Yes, your Honor.  This is Rebecca Dell,

1  that's correct.

2          THE COURT:  OK.  And I advise both sides of their

3  right to appeal.  That's the sentence of the Court.

4          Now, Mr. Hall, good luck to you.

5          THE DEFENDANT:  Thank you.

6          THE COURT:  For heaven's sake, stay out of trouble,

7  will you, please?

8          THE DEFENDANT:  Heaven help us all.  God bless.  Thank

9  you.

10          THE COURT:  Your mother is a very decent person and

11  has taken good care of you.  Don't let her down.

12          THE DEFENDANT:  No, no, no.

13          THE COURT:  All right.  That's the sentence of the

14  Court.  And, Mr. Hall, you are very fortunate you had as good a

15  lawyer as Mr. Flood.  He really worked hard for you in the

16  case.  With your record, he really went to bat for you, and he

17  did a good job for you.

18          THE DEFENDANT:  OK.

19          THE COURT:  And you should be very thankful to him.

20          That's the sentence of the Court.  Thank you all for

21  appearing by phone.  I appreciate it.

22          Is there anything else from anyone?

23          MR. FLOOD:  Your Honor, this is Christopher Flood.

24  No, just our thanks.

25          THE COURT:  My pleasure.  Thank you.  Thanks to the

K767HALS

1    government.  And to the court reporter particularly, thank you

2    for handling this in this difficult fashion.  Thank you all.

3    Goodbye now.

4                                   – – –

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25